UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS YORBA, on behalf of himself and similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY; and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No.:  24-cv-00031-GPC-VET<br><br>**ORDER DENYING THE MOTION TO REMAND**<br><br>**[Dkt. No. 9]** |

Before the Court is Plaintiff Luis Yorba's ("Plaintiff") motion to remand this action to the San Diego Superior Court on ground that Defendant Government Employees Insurance Company ("Defendant") improperly removed this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"). (Dkt. No. 9.) Defendant filed an opposition. (Dkt. No. 14.) Plaintiff replied. (Dkt. No. 17.) The Court finds the matter suitable for decision based on the papers and VACATES the hearing on the motion to remand scheduled for July 19, 2024. Based on the reasoning below, the Court DENIES Plaintiff's motion to remand and request for attorneys' fees.

1

**BACKGROUND**

On November 27, 2023, Plaintiff filed the Complaint for this putative wage and hour class action on behalf of himself and other hourly non-exempt direct and contracted temporary employees of Defendant in California. (Dkt. No. 1, at Compl. ¶ 45.) Plaintiff alleges Defendant engaged in illegal pay practices involving these employees over the last one to four years prior to the filing of the Complaint. (*Id.* at Compl. ¶¶ 1, 45.)

Specifically, the Complaint alleges: (1) failure to pay wages for all hours worked at minimum wage in violation of California Labor Code sections 1994 and 1197; (2) failure to pay overtime wages for daily overtime worked in violation of California Labor Code sections 510 and 1194; (3) failure to authorize or permit meal periods in violation of California Labor Code sections 512 and 226.7; (4) failure to authorize or permit rest periods in violation of California Labor Code section 226.7; (5) failure to pay wages for accrued sick days at the regular rate of pay in violation of California Labor Code section 246; (6) failure to provide complete and accurate wage statements in violation of California Labor Code section 226; (7) failure to timely pay all earned wages and final paychecks due at time of separation of employment in violation of California Labor Code sections 201, 202, and 203; and (8) unfair business practices in violation of California Business and Professions Code sections 17200, et seq. (Dkt. No. 1 at 9-10.)[1]

On January 4, 2024, Defendant removed this action to federal court pursuant to CAFA, 28 U.S.C. §§ 1332(d) and 1441. (*Id.* at 1.) Defendant alleged that the amount in controversy ("AIC") for Plaintiff's first cause of action, Minimum Wage Violations, is $27,108,000, a value exceeding the requisite $5,000,000 necessary for federal court jurisdiction. (*Id.* at 5.)

On February 2, 2024, Plaintiff moved to remand this action to the San Diego Superior Court, arguing that Defendant failed to meet its burden of showing that the AIC

---

[1] Page numbers are based on the CM/ECF pagination.

24-cv-00031-GPC-VET

exceeds $5,000,000. (Dkt. No. 9-1 at 6-7.) Plaintiff does not dispute that the class is over 100 members or that the parties are minimally diverse. (*Id*.); *Hawaii ex rel. Louie v. HSBC Bank Nevada*, 761 F.3d 1027, 1039 (9th Cir. 2014) (listing the requirements for federal jurisdiction over a class action under CAFA).

On April 29, 2024, Defendant filed an opposition to the motion to remand supported by a declaration by Kevin Schweitzer, Defendant's Senior Manager of People Analytics. (Dkt. No. 14 at 5; Dkt. No. 14-1, at Decl. ¶ 1.) Defendant's opposition estimates the AIC for each cause of action as follows:

Count 1 – minimum wage claim: $13,441,800;

Count 2 – overtime wage claim: $24,750,000;

Counts 3 & 4 – meal and rest period claims: $82,500,000;

Count 5 – sick days: not included;

Count 6 – inaccurate wage statement: $18,000,000;

Counts 7 & 8 – wages due at separation and unfair business practices: not included;

Attorneys' fees: $14,047,950.

(Dkt. No. 14 at 14-15.) On May 17, 2024, Plaintiff filed a reply, rearguing that Defendant's estimated AIC is based on improper assumptions and estimates and alleging that Defendant failed to meet its evidentiary burden. (Dkt. No. 17 at 1-2.)

**LEGAL STANDARD**

To remove a case commenced as a class action in a state court, CAFA requires the removing defendant to allege that the AIC exceeds $5,000,000. 28 U.S.C. § 1332(d)(2). A defendant's notice of removal need only include a plausible allegation that the AIC exceed $5,000,000 and need not include evidentiary submissions. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014).

24-cv-00031-GPC-VET

However, when the plaintiff contests the defendant's AIC allegation, removal is proper when "'the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Id.* at 88 (citing 28 U.S.C. § 1446(c)(2)(B)). "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* Furthermore, the defendant seeking removal bears the burden to produce evidence showing that the AIC exceeds $5,000,000 and to persuade the court that the AIC estimate is reasonable. *Ibarra*, 775 F.3d at 1197.

The parties may submit evidence outside the complaint, including affidavits or declarations. *Id*. "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id*. But a declaration from a knowledgeable employee along with allegations in the complaint can satisfy the defendant's burden, even without other evidence such as payroll or timekeeping records. *See Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1186-87 (E.D. Cal. 2020).

**ANALYSIS**

Defendant calculated the AIC for causes of action one, two, three, four, and six along with an estimate of attorneys' fees. (Dkt. No. 14 at 14-15.) Plaintiff contests Defendant's estimated AIC for every cause of action and the attorneys' fees estimate. (Dkt. No. 17 at 5-8.) Because it resolves the question, the Court will analyze only the AIC for the first cause of action.

**First Cause of Action: Minimum Wage Claim**

The Complaint alleges that Defendant failed to pay wages for all hours worked at the legal minimum wage. (Dkt. No. 1, at Compl. ¶¶ 13-15.) The Complaint claims that Defendant's "policies, practices, and/or procedures" required remote employees in California to spend one hour setting up an employer-provided system off the clock and use five to fifteen minutes each remote shift booting up prior to starting their shift in the timekeeping system, and that Defendant rounded down employees' daily hours at the time of their clock-in and clock-out to the nearest quarter of an hour to Defendant's benefit. (*Id.*

24-cv-00031-GPC-VET

at Compl. ¶ 15.) Therefore, Defendant allegedly required Plaintiff and similarly situated employees to work time for no compensation. (*Id.* at Compl. ¶ 16.) Using the allegations in the Complaint and information from Schweitzer's declaration, Defendant calculated the AIC for this cause of action separately for each theory of liability and added a liquidated damages estimate. (Dkt. No. 14 at 7-10.)

### A. Initial Workstation Set-up Theory of Liability

The Complaint alleges that Defendant required employees who worked remotely in California to set-up their employer-provided computer system off the clock. (Dkt. No. 1, at Compl. ¶ 51(a).) This unpaid set-up process took "about 1 hour to complete." (*Id.*)

Defendant calculated the set-up AIC based on Plaintiff's alleged one hour set-up time, the minimum wage rate, and an employee count of 4,500. (Dkt. No. 14 at 9.) Defendant relied on Schweitzer's declaration to establish that 4,500 putative class members started working remotely as of March 13, 2020 and applied the California minimum wage rate of $13.00/hour, which took effect starting January 1, 2020. (*Id.*; Dkt. No. 14-1, at Decl. ¶¶ 4, 6.) Hires from later years performed their workstation set-up when the minimum wage rate was higher, but Defendant used the $13.00/hour rate for a conservative estimate. (*Id.*) Putting it together, Defendant multiplied 4,500 employees, the $13.00/hour minimum wage rate, and one hour of unpaid time per employee to estimate an AIC of $58,500. (*Id.*)

Plaintiff argues that the Defendant's set-up theory of liability AIC calculation was flawed because Defendant failed to differentiate between remote and non-remote employees. (Dkt. No. 9-1 at 12.) However, Schweitzer's declaration states that "[t]he number of current and former hourly non-exempt employees who worked for Geico in California from November 27, 2019 through February 15, 2024 is over 4,500" and that "[b]eginning March 13, 2020 virtually all non-exempt hourly employees in California have worked at least partially remotely." (Dkt. No. 14-1, at Decl. ¶¶ 4, 6.) Because virtually all non-exempt employees during the class period had to perform the workstation set-up, Defendant was not required to further differentiate between remote and non-remote employees.

24-cv-00031-GPC-VET

Therefore, Defendant's AIC of $58,500 was reasonably based upon Plaintiff's own definition of the minimum wage class and the class size asserted by Schweitzer's declaration.

### B. Boot-Up Theory of Liability

The Complaint alleges that Defendant required Plaintiff and other class members to spend five to fifteen minutes every remote shift booting up their computers and logging in to the computer system before starting their shift. (Dkt. No. 1, at Compl. ¶ 51(b).) Because the employees' shifts started after completing the boot-up process, the Complaint further alleges that the time spent booting up was unpaid. (*Id.* at Compl. ¶ 52.)

Defendant calculated the AIC for this theory of liability by multiplying the number of applicable workweeks, the unpaid hours per workweek, and the minimum wage rate. (Dkt. No. 14 at 9-10.) Schweitzer's declaration explains that virtually all non-exempt hourly employees in California worked fully remotely from March 13, 2020 to December 31, 2021; during which time the total number of weeks worked by all applicable employees was 240,000. (Dkt. No. 14-1, at Decl. ¶¶ 6-7.) This timeframe is shorter than the class period and was used by Defendant for this theory of liability because it was only during this time that virtually all hourly employees in California worked fully remotely, eliminating the need to differentiate between remote and non-remote employees. (*Id.*; Dkt. No. 14 at 9.) Schweitzer's declaration bases its calculation of the number of employee workweeks on the "actual number of weeks worked by the GEICO employees mentioned above," referring to all current and former hourly non-exempt employees who worked for GEICO in California from March 13, 2020 to December 31, 2021. (Dkt. No. 14-1, at Decl. ¶¶ 3, 5, 7.) Defendant then relied on Plaintiff's own allegation that the class members spent five to fifteen minutes on the boot-up process every shift worked remotely to find an 100% violation rate, meaning this process occurred and went unpaid every shift, with an average

24-cv-00031-GPC-VET

of ten minutes of unpaid boot-up time per shift.[2] (Dkt. No. 14 at 10.) Based on that ten-minute per shift average and an average of five shifts per week, Defendant estimated fifty minutes (0.83 hours) of unpaid boot-up time per workweek. (*Id*.) Finally, Defendant used the California minimum wage of $13.00/hour which took effect on January 1, 2020. (*Id*.)

Based on the above values, Defendant estimated the AIC for the boot-up theory of liability as follows: 240,000 workweeks x 0.83 unpaid hours of boot-up time per workweek (10 minutes per day or 50 minutes per week) x $13.00 per hour minimum wage rate = $2,589,600. (*Id*.)

Plaintiff argues Defendant improperly assumed the 100% violation rate applied to the whole putative class and failed to differentiate between the remote and non-remote employees, who would not follow the same boot-up system. (Dkt. No. 9-1 at 12.) However, Defendant limits its calculation to weeks when "virtually all non-exempt hourly employees in California [worked] fully remotely." (Dkt. No. 14-1, at Decl. ¶¶ 6-7.) Therefore, Plaintiff's argument that Defendant failed to differentiate between the remote and non-remote employees fails as Defendant's calculations relied only on the period in which "virtually all" employees worked fully remotely.

Plaintiff additionally argues that Defendant's assumed 100% violation rate was unreasonable as it was not based on the Complaint. (Dkt. No. 17 at 5.) However, the Complaint stated the unpaid boot-up time occurred "every shift," supporting Defendant's assumed 100% violation rate. *See Fischer v. Kelly Servs. Glob., LLC*, No. 23-CV-1197 JLS (JLB), 2024 WL 382181, at *5 (S.D. Cal. Jan. 31, 2024) (holding that allegations connoting a uniform practice can give rise to a reasonable assumption of a 100% violation rate when not qualified by words such as "sometimes" or "often").

Therefore, Defendant's estimated AIC of $2,589,600 was reasonable.

---

[2] Plaintiff does not contest Defendant's use of ten minutes of boot-up time per shift and the Court finds that Defendant reasonably used the midpoint of the range supplied in the Complaint.

24-cv-00031-GPC-VET

**C. Time Rounding Theory of Liability**

The Complaint alleges that Defendant failed to pay Plaintiff and other class members because of "policies, practices, and/or procedures" including rounding down or "shaving" employees' daily total hours at the time of clocking in or out to the nearest quarter of an hour to Defendant's benefit. (Dkt. No. 1, at Compl. ¶ 51(d).)

Defendant calculated the AIC for this theory of liability by assuming an 100% violation rate averaging seven minutes of time shaved per shift (or 35 minutes per workweek). (Dkt. No. 14 at 8.) Defendant then applied a $12.00/hour minimum wage rate to "offer the most conservative possible calculation" of the AIC. (*Id.*) And, relying on Schweitzer's declaration, Defendant multiplied these figures by 550,000 workweeks—the number of weeks actually worked by hourly non-exempt GEICO employees during the class period. (*Id.* at 9; Dkt. No. 14-1, at Decl. ¶ 5.) 550,000 workweeks multiplied by 35 minutes per workweek (0.583 hours) and $12.00/hour minimum wage rate results in an AIC estimate for the time rounding theory of liability of $3,847,800. (*Id.* at 9.)

Plaintiff argues Defendant failed to provide sufficient evidence showing that the rounding theory of liability should be applied to all 4,500+ members of the putative class because Defendant should have offered information around "period rounding and/or time shaving policies, practices, and/or procedures" and the number of putative class members who worked pursuant to said policies. (Dkt. No. 17 at 5-6.) Because Defendant did not provide the information Plaintiff described, Plaintiff contends that Defendant's AIC calculation on the rounding theory of liability was not founded on the allegations of the Complaint, lacks evidentiary support, and should be disregarded. (*Id.* at 6.)

An alleged "pattern and practice" of labor law violations does not reasonably support an assumption of a 100% violation rate without further evidence. *Ibarra*, 775 F.3d at 1198-99. When a defendant's assumption is deemed unreasonable, a court should look to use a better alternative assumption if one is provided by either party. *See Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022). However, where no

24-cv-00031-GPC-VET

alternative is suggested, a court may reject the assumption and assume the defendant has not met its burden. *Id.*

Here, Defendant assumed an 100% violation rate, stating that "Plaintiff alleges class members worked unpaid minutes **every shift**." (Dkt. No. 14 at 8-9 citing Dkt. No. 1, at Compl. ¶ 51 (emphasis in original).) However, the Complaint specifically alleged that Defendant employed "policies, practices, and/or procedures" resulting in time shaving, not that Defendant rounded down class members' hours every shift. (Dkt. No. 1, at Compl. ¶ 51(d).) As a matter of law, Defendant cannot reasonably assume an 100% violation rate based solely on Plaintiff's "policies, practices, and/or procedures" allegations. *See Ibarra*, 775 F.3d at 1198-99. Neither party provided a better alternative violation rate, and because the Court cannot pull a violation rate out of thin air, it must disregard this part of the AIC calculation entirely.

Because Defendant's calculations relied on an unreasonable assumption, Defendant's estimated AIC for the time rounding theory of liability is disregarded.

**D. Liquidated Damages Theory of Liability**

When employers pay employees less than the minimum wage, they are subject to liquidated damages equal to the wages unlawfully unpaid. Cal. Lab. Code § 1194.2. In short, liquated damages double the recovery for the plaintiff. Furthermore, employees are due $100 for initial, intentional violations and $250 for each subsequent violation. Cal. Lab. Code § 1197.1(a).

Defendant included liquidated damages in its AIC by doubling the damages it calculated using the set-up, boot-up, and time rounding theories of liability. (Dkt. No. 14 at 10.)  In addition, Defendant assumes that each of the 4,500 putative class members are due $100 pursuant to Cal. Lab. Code § 1197.1, adding another $450,000 to the total AIC estimate. (*Id.*)

Plaintiff does not challenge Defendant's liquidated damages calculation or its inclusion in Defendant's estimated AIC. (Dkt. No. 17 at 5-6.) Based on the above analysis for each theory of liability, the liquidated damages estimate is equivalent to the sum of

24-cv-00031-GPC-VET

$58,500 from the set-up theory of liability and $2,589,600 from the boot-up theory of liability, for a total of $2,648,100. Adding in the $450,000 liability estimate pursuant to Cal. Lab. Code § 1197.1, the liquidated damages AIC is $3,098,100.

In sum, the total reasonable AIC for the alleged minimum wage violations is $5,746,200, calculated as follows: $58,500 from the set-up theory of liability; plus $2,589,600 from the boot-up theory of liability; plus $0 from the time rounding theory of liability (as the Defendant's estimate was disregarded); plus $3,098,100 from liquidated damages.

To grant federal jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2), the AIC must exceed $5,000,000. Because the reasonable AIC estimate for the first cause of action is $5,746,200, the Court finds that Defendant established an AIC above the requisite $5,000,000 by a preponderance of the evidence.

The Court will not address the AIC for the remaining causes of action because the AIC has already surpassed the jurisdictional threshold.

**CONCLUSION**

Therefore, the Court DENIES Plaintiff's motion to remand this action to state court and Plaintiff's request for attorneys' fees.

**IT IS SO ORDERED.**

Dated:  July 17, 2024

Hon. Gonzalo P. Curiel
United States District Judge